IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERVIN K. SPURIEL,** | : | |
| *Petitioner,* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JASEN BOHINSKI, et al.,** | : | **NO. 21-CV-1915** |
| *Respondents.* | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                    **June 26, 2026**

The Court writes for the benefit of the Parties and assumes familiarity with the facts of the case. Before the Court is Magistrate Judge Sitarski's Report and Recommendation (ECF No. 76) that this Court should deny Petitioner Ervin K. Spuriel's Petition for a Writ of *Habeas Corpus* (ECF No. 2, the "Petition"). Petitioner has filed twelve objections to the Report and Recommendation and a Motion for Leave to File Amended Objections. ECF Nos. 80, 81. For the reasons stated below, the Court will adopt Judge Sitarski's Report and Recommendation in full and overrule Petitioner's objections.

## I.    BACKGROUND

Petitioner Ervin K. Spuriel is serving a life sentence following his convictions of first-degree murder and related offenses in the Court of Common Pleas of Philadelphia County. ECF No. 76 at 1; *Commonwealth v. Spuriel*, No. 603 EDA 2013, 2014 WL 10575388, at *1 (Pa. Super. Ct. Sept. 8, 2014) (hereinafter "*Spuriel I*") (affirming Spuriel's convictions and judgment of sentence on direct appeal). As summarized by the trial court, the relevant facts are as follows: Petitioner and co-defendant Chaz Henry shot and killed the victim, Jamal Parker, in South Philadelphia on July 10, 2010 at approximately 10:18 p.m. *Spuriel I*, 2014 WL 10575388, at *1.

1

Immediately prior to the shooting, Parker was driving down 21st Street towards Mifflin Street when he stopped his car briefly to talk to his friend, Marquis Gilliard, before continuing to drive down the block and then getting out of the car to approach Petitioner. *Id.* At the time of the shooting, Petitioner and his co-defendant were with a group of men that included Andrew Fairey, Antione Smith, and the co-defendant's brother, Devon Henry, who all fled the scene after Parker was shot. *Id.*

After the shooting, detectives questioned Gilliard, who identified Petitioner and co-defendant Henry, both of whom he knew personally, as the individuals who shot Parker. *Id.* The police also questioned Devon Henry, who told them that he had witnessed the shooting. *Id.* Both Gilliard and Devon Henry told the police that Petitioner and co-defendant Henry murdered Parker because they both owed him money for drugs. *Id.* David Marks, a friend of Parker, told detectives when questioned that on the night of the shooting, Petitioner told Marks that he had killed Parker. *Id.* The police recovered two cellphones belonging to Parker from the scene of the shooting. *Id.* One of the cellphones contained several confrontational text message exchanges between Petitioner and Parker. *Id.* The phone records also showed that Parker had called Petitioner twice right before the shooting occurred. *Id.* Fairey was also questioned by the police and gave a statement inculpating Petitioner as one of the murderers. *Id.* at *12.

During the jury trial, Petitioner testified in his own defense and denied any involvement in Parker's death. *Id.* at *2. The Commonwealth introduced evidence concerning an open investigation into Petitioner's sales of crack cocaine. *Id.* Petitioner admitted that he bought crack in bulk and sold it for profit but denied that he bought crack from Parker or that he owed Parker money, with the exception of $175 that he owed Parker for a YMCA membership. *Id.* Petitioner testified that on the night of the shooting, he was at a cookout a block away from the scene of the

2

murder, but he was unable to get any of the approximately 15 people present at the cookout to testify on his behalf. *Id.* Petitioner further testified on cross-examination that he gave Parker the $175 he owed him at approximately 8:30 p.m. or 8:45 p.m. the night that Parker was murdered. N.T. 12/20/2012 at 152. Petitioner stated that he met Parker on the intersection of 21st Street and Sigel Street, which he claims was where the cookout was taking place. *Id.* at 164–65. Petitioner then testified that upon hearing the gunshots, "[e]verybody got low" and "[was] trying to see where it was coming from" because "[y]ou can't tell where shots coming from." *Id.* at 165–66. During his testimony, Petitioner never clarified which direction he proceeded from the cookout on Sigel Street after hearing the gunshots or what time he left the cookout. *See id.* at 136–91. At the end of the trial, the jury convicted Petitioner of first-degree murder, criminal conspiracy, and violating the Uniform Firearms Act. *Spuriel I*, 2014 WL 10575388, at *2. On January 11, 2013, Petitioner was sentenced to a mandatory term of life imprisonment. *Id.*

Petitioner's conviction and sentence were affirmed on direct appeal, and the Pennsylvania Supreme Court denied his petition for allowance of appeal. *Id.* at *8, *allocatur denied*, 110 A.3d 997 (Pa. 2015). Petitioner then filed a Post-Conviction Relief Act ("PCRA") petition in the Court of Common Pleas of Philadelphia County, which denied the petition.[1] *Commonwealth v. Spuriel*, No. 1281 EDA 2019, 2020 WL 5797895, at *1 (Pa. Super. Ct. Sept. 29, 2020) (hereinafter "*Spuriel II*"). The Pennsylvania Superior Court affirmed the denial, and the Pennsylvania Supreme Court denied review. *Id.* at *6, *allocatur denied*, 251 A.3d 774 (Pa. 2021).

On April 21, 2021, Petitioner filed a timely habeas petition in federal court, asserting the following claims for relief (recited verbatim):

---

[1] The details of Petitioner's state PCRA petition are laid out in Judge Sitarski's Report and Recommendation. ECF No. 76 at 4–5.

1. Trial court erroneously permitted the Commonwealth to introduce extensive evidence in the arrest of appellant for PWID [possession with intent to deliver] where the charge was open where prejudicial impact outweighed the probative value of this detailed description.

2. Trial counsel ineffective where he failed to call witness who could have corroborated Appellant testimony and refuted the Commonwealth eyewitness.

3. Trial counsel ineffective for failing to present video evidence that directly refute[d] Commonwealth eyewitness statement, Google map as to Appellant's direction of travel immediately after the shooting.

4. Trial counsel provided ineffective assistance where he failed to consult fully with his client regarding his right to present character evidence and failed to investigate and present character.

5. Trial counsel ineffective where he failed to request curative instructions or to object to the lack of curative instructions to the prosecutor's improper closing statement concerning alibi evidence.[2]

ECF No. 2 at 9–14. On October 27, 2021, Petitioner amended his Petition to include additional arguments supporting his claims. ECF Nos. 15, 17. In January 2023, Petitioner further amended his Petition to add several *Brady* claims. ECF Nos. 28, 30. The above-captioned action was stayed while Petitioner litigated these new claims in state court, ECF No. 35, where they were ultimately rejected, *Commonwealth v. Spuriel*, No. 825 EDA 2023, 2024 WL 4274726, at *1 (Pa. Super. Ct. Sept. 24, 2024) (hereinafter "*Spuriel III*"). On November 14, 2024, Petitioner filed a third motion to amend his Petition, which remains pending. ECF No. 51.

The Commonwealth filed its response to the Petition on November 26, 2024. ECF No. 54. Petitioner filed his reply on February 24, 2025. ECF No. 62. The case was reassigned to Magistrate Judge Sitarski for the preparation of a Report and Recommendation. ECF No. 22. Judge Sitarski ordered supplemental briefing from the Parties in relation to Petitioner's reply. ECF Nos. 63, 72,

---

[2] As explained in Judge Sitarski's Report and Recommendation, although Petitioner did not formally list this claim as a separate claim in his Petition, both Parties treat it as such, and so, the Court will consider it separately as well. *See* ECF No. 76 at 6 n.2.

75. Judge Sitarski issued her Report and Recommendation on December 19, 2025. ECF No. 76. After receiving an extension from the Court, Petitioner timely filed objections to the Report and Recommendation on February 17, 2026. ECF Nos. 79, 80. Accordingly, the Report and Recommendation (ECF No. 76) is ripe for review.

## II.    LEGAL STANDARD

The district court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of a habeas petition pending before the court. 28 U.S.C. § 636(b)(1)(B). "Within fourteen days after being served with a copy" of the magistrate judge's report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." *Id.* § 636(b)(1)(C).

Upon review of the report and recommendation from the magistrate judge, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," if the objections are timely and properly filed. *Id.; see Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984) (stating that "a *de novo* determination is not always required" and district courts need not make *de novo* determinations where objections are untimely or not specific). Objections that merely restate arguments already considered by the magistrate judge are not entitled to *de novo* review. *Gray v. Delbiaso*, No. 14-cv-4902, 2017 WL 2834361, at \*4, (E.D. Pa. June 30, 2017). Objections that do not respond to the magistrate judge's recommendation but rather repeat conclusory statements from the original petition are generally overruled. *Prout v. Giroux*, No. 14-cv-3816, 2016 WL 1720414, at \*11 (E.D. Pa. Apr. 29, 2016).

### III.    DISCUSSION

Petitioner makes twelve objections to Judge Sitarski's Report and Recommendation, essentially arguing that Judge Sitarski erred in making each of her findings in her Report and Recommendation. ECF No. 80. Petitioner's objections are without merit, and the Court will address each in turn.

#### A. Objection One

Petitioner's first objection is that Judge Sitarski erred in finding that Claim 1, which argues that the trial court erroneously admitted the Commonwealth's possession with intent to deliver ("PWID") evidence, is not cognizable on federal habeas review. *Id.* at 2–3. Petitioner acknowledges that "federal habeas relief generally is not available for errors in state evidentiary rulings," but argues that because the admission of evidence concerning an open investigation into Petitioner's drug dealing was so unfair to Petitioner at his trial so as to deny him due process of law, relief on this claim is available. *Id.* However, one of the Supreme Court cases that Petitioner cites in support of his argument, *Lisenba v. California*, actually reinforces Judge Sitarski's conclusion that Claim 1 is not cognizable on federal habeas review: "We do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence." 314 U.S. 219, 228 (1941). Petitioner has not offered any case law stating otherwise. In any event, Petitioner fails to show how the Commonwealth's evidence about Petitioner's open drug investigation prejudiced him at trial so as to deny him due process of law. He contends that the testimony about his alleged drug dealing "allowed the jury to convict based on propensity rather than proof of the charged murder," ECF No. 80 at 3, but there are several problems with this inferential leap. First, a propensity to murder does not follow from a propensity to deal drugs. Second, evidence pertaining to Petitioner's drug dealing was admitted to show motive, not

propensity. *See Spuriel I*, 2014 WL 10575388, at \*11–12. Finally, Petitioner's assertion that the jury may have convicted him on the basis of propensity rather than proof of the charged murder is disingenuous given the strength of the Commonwealth's overall case. For the reasons stated, Petitioner's first objection is overruled.

### B. Objection Two

Petitioner argues that Judge Sitarski erred in concluding that the Superior Court's prior analysis and rejection of Claim 2 was a reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). ECF No. 80 at 3–4. In Claim 2, Petitioner asserts that trial counsel was ineffective for failing to call Roger Tyrone Whitaker as a witness at trial. ECF No. 2 at 11–12. Petitioner claims that "Whitaker's testimony was critical to the defense" because "[h]e would have testified that he saw Petitioner standing calmly across the street from his house approximately 10-15 seconds after hearing the last gunshot—not fleeing the scene as the Commonwealth's witnesses claimed." ECF No. 80 at 3–4. Because "Whitaker's testimony would have substantially undermined [Marquis Gilliard and Devon Henry's] credibility," Petitioner argues that trial counsel's decision not to call Mr. Whitaker as a witness "cannot be considered reasonable trial strategy when it left the jury with only the Commonwealth's version of events regarding Petitioner's whereabouts and demeanor immediately after the shooting." *Id.* at 4.

However, this was not the case because Petitioner testified at trial and recounted to the jury his version of events, informing the jury that he was at a cookout a block away at the time of the shooting. *Spuriel I*, 2014 WL 10575388, at \*2. Although Petitioner's trial counsel only learned about Petitioner's cookout alibi during the middle of the trial when Petitioner testified, N.T. 07/18/2018 at 31, the defense strategy that trial counsel pursued at the outset of trial was that Petitioner did not commit the crime and the Commonwealth eyewitnesses misidentified Petitioner

as the assailant and as part of that strategy, counsel sought to discredit the State's eyewitnesses. *Id.* at 40–43. Petitioner's counsel explained at the state PCRA hearing that Mr. Whitaker's testimony that he saw Petitioner less than a block away from the scene of the crime within 15 seconds of hearing the last gunshot would have undermined the defense's misidentification strategy. *Id.* at 40. At the PCRA hearing, trial counsel clarified why he decided against presenting Mr. Whitaker's account to the jury:

> Part of the problem with [Mr. Whitaker's] statement is that it put Mr. Spuriel right at the scene right after the shooting had occurred. . . . Mr. Spuriel had already testified to something I didn't know about, but even my decision then, the case was an ID case. . . . There was no way that I would want a witness to place Mr. Spuriel immediately at the scene.

*Id.* Because Mr. Whitaker's testimony would have weakened Petitioner's misidentification defense, trial counsel's decision not to call Mr. Whitaker at trial was reasonable. In fact, had trial counsel made the decision to have Mr. Whitaker testify at trial, Petitioner may very well be raising an ineffective assistance of counsel claim that the decision to allow Mr. Whitaker to testify was damaging to Petitioner's defense strategy at trial.

In any event, the absence of Mr. Whitaker's testimony did not prejudice Petitioner because Mr. Whitaker's testimony placing Petitioner near the scene of the crime seconds after the shooting took place would have undermined Petitioner's own testimony that he was at a cookout a block away the night of the shooting. During the trial, Petitioner testified that when he heard the gunshots while at the cookout on Sigel Street, he did not initially know where the shots were coming from and after hearing the shots, "[e]verybody was walking around the neighborhood then." N.T. 12/20/2012 at 166. Petitioner's testimony is inconsistent with Mr. Whitaker's testimony at the PCRA hearing placing Petitioner by himself a block away from the cookout, at 1905 21st Street near Mifflin Street, only 10 to 15 seconds after the last gunshot, N.T. 06/15/2018 at 10–17, when

8

Petitioner allegedly did not even know where the shots were coming from and the whole neighborhood was walking around after hearing the gunshots, N.T. 12/20/2012 at 165–66. Therefore, Mr. Whitaker's testimony would have only served to discredit Petitioner's own testimony at trial. As such, the inclusion of Mr. Whitaker's testimony at trial would not have impacted the outcome of the trial and may in fact have done more harm than good to Petitioner's defense.

Petitioner cannot circumvent Mr. Whitaker's testimony placing him near the scene of the crime by not calling Mr. Whitaker to testify at trial and then turn around and fault his attorney for failing to call Mr. Whitaker to offer that exact same testimony to show that his demeanor was calm after the shooting. Further, Petitioner's argument relies upon the false premise that a calm outward demeanor unequivocally means that Petitioner did not commit the crime. A calm demeanor is equally likely to lead the jury to conclude that Petitioner is a cold-blooded murderer, which could have been another reason that Petitioner's counsel may have declined to call Mr. Whitaker at trial.

Finally, to the extent Petitioner faults his counsel for not presenting Mr. Whitaker's testimony at trial as part of an alibi defense, this argument is unavailing. Petitioner never presented an alibi defense at trial and is now attempting to raise one in his habeas petition. At the state PCRA hearing, Petitioner's trial counsel testified that he did not prepare notice of an alibi defense to the Commonwealth because prior to trial, Petitioner had informed counsel that he did not know exactly where he was on the night of the shooting. N.T. 07/18/2018 at 30–32. The first time that trial counsel learned that Petitioner was at a cookout at the time of the shooting was when Petitioner took the stand at trial. *Id.* at 31. If Petitioner had presented an alibi defense at trial, Petitioner would have had to inform the Commonwealth in advance of the trial and the Commonwealth would have had the opportunity to investigate Petitioner's claims, including who Petitioner claimed he was

with at the time that he heard the gunshots and whether there was a cookout at all. *See Commonwealth v. Anthony*, 546 A.2d 1122, 1124 (Pa. Super. Ct. 1988) (explaining that Pennsylvania Rules of Criminal Procedure "provide that a defendant who intends to present a defense of alibi must file a notice of intention to claim the defense" so that the prosecution has ample opportunity to investigate the defendant's evidence). The Court rejects Petitioner's attempt to present an alibi defense at the habeas stage.

The Court finds that Petitioner's counsel was not ineffective for failing to call Mr. Whitaker to testify at trial. The second objection is overruled.

### C. Objection Three

Petitioner's third objection is that Judge Sitarski erred in concluding that trial counsel was not ineffective for failing to present at trial video evidence showing Petitioner "not panicking or acting erratic" shortly after the shooting. ECF No. 80 at 5. As with the second objection, Petitioner's trial counsel explained during the state PCRA hearing that the decision not to show the video in its entirety at trial was a strategic one based on the defense theory that Petitioner was not present at the scene of the shooting and the Commonwealth eyewitnesses misidentified him as the assailant. *See* ECF No. 76 at 23; N.T. 07/18/2018 at 45–46. And so, as with the testimony of Mr. Whitaker, Petitioner's trial counsel opted not to show the surveillance video to the jury because the video depicted Petitioner at the scene of the crime immediately after the shooting occurred, which would have undermined the defense theory of the case that Petitioner was misidentified as one of the shooters. Further, trial counsel's decision not to show the jury the surveillance video did not prejudice Petitioner because the video, by showing Petitioner at the scene of the shooting immediately after the shooting took place, would have undermined Petitioner's own testimony at trial that he was at a cookout a block away at the time of the shooting. *See* ECF No. 76 at 23.

Now, in the midst of collateral proceedings, with the benefit of hindsight, Petitioner argues that the impeachment value of the video—by showing that he was calm as opposed to panicked and fleeing the scene—outweighed the fact that it placed him in the vicinity of the shooting and "would have devastated the Commonwealth's case." ECF No. 80 at 5. Evidence of Petitioner's allegedly calm demeanor in the aftermath of the shooting would have hardly "devastated" the prosecution's case given the eyewitness testimony that Petitioner shot the victim and other ample evidence tying Petitioner to the shooting. And, as discussed above, evidence showing Plaintiff's calm demeanor could have led the jury to deduce that Petitioner is a cold-blooded murderer and thus, would have been harmful to his defense. Therefore, it appears that Petitioner's counsel weighed the impeachment value of the surveillance video against the harm it would cause to the defense theory of the case and made the strategic decision not to show the video in full to the jury. The Court finds that trial counsel was not ineffective for making this tactical call. The third objection is overruled.

### D. Objection Four

Petitioner's fourth objection has already been addressed by Judge Sitarski. ECF No. 76 at 24–25. Petitioner claims that Judge Sitarski erred in finding that his trial counsel was not ineffective for deciding not to introduce good character evidence on his behalf at trial. ECF No. 80 at 6. Petitioner acknowledges that his trial counsel had a legitimate concern about opening the door to harmful rebuttal evidence by the Commonwealth, but argues that the harm of such rebuttal evidence was minimal because the Commonwealth had already introduced evidence portraying Petitioner as a drug dealer. *Id.* Even if that were true, trial counsel's decision to avoid opening the door to bad character evidence was reasonable at the time of trial given the unknowns of the bad character evidence the Commonwealth would have produced to counter the introduction of

Petitioner's good character evidence. Additionally, Petitioner cannot argue that he was deprived "of the ability to make an informed choice about his own defense," *id.*, as trial counsel has indicated that he had discussed this strategic decision with Petitioner before the trial, ECF No. 76 at 24. Accordingly, the fourth objection is overruled.

### E. Objection Five

Petitioner objects to Judge Sitarski's conclusion that the prosecutor's improper statements during opening and closing arguments at trial did not rise to the level of a due process violation. ECF No. 80 at 7. Petitioner argues that "[t]he cumulative effect of the prosecutor's misconduct warrants habeas relief" but does not elaborate further. *Id.* While Petitioner argues that Judge Sitarski's "piecemeal analysis of each statement fails to account for their synergistic impact on the fairness of the trial," *id.*, Judge Sitarski actually did evaluate all of the statements together, concluding in her Report and Recommendation: "Taken together, and in the overall context of his trial, Petitioner fails to demonstrate that the collection of remarks made by the prosecutor denied him a fair trial, thus violating his Due Process rights." ECF No. 76 at 30. Judge Sitarski addressed Claim 5 at length, dedicating approximately six pages of discussion on the claim in her Report and Recommendation. *See id.* at 25–30. Petitioner's objection merely rehashes arguments that have already been considered and rejected by Judge Sitarski, and as such, the objection is overruled.

### F. Objection Six

Petitioner objects to Judge Sitarski's conclusion regarding Claim 6, arguing that "Benjamin Whitaker's statement is exculpatory" because "[h]e stated that he was in the area where the shooting occurred and never saw Petitioner there." ECF No. 80 at 8. However, as Judge Sitarski pointed out in her Report and Recommendation, Benjamin Whitaker "does not aver that he witnessed the events of the shooting, that he saw who the shooter was, nor that he was aware of

Petitioner's direction of travel during or after the shooting." ECF No. 76 at 32. And, because Petitioner admitted that he was present at the scene of the shooting after it occurred, and in fact faults his trial counsel for not presenting further evidence showing Petitioner's presence at the scene immediately after the shooting (refer to discussion of Objections Two and Three, *supra*), Benjamin Whitaker's statement would have been inconsistent with Petitioner's own testimony and would not have provided any exculpatory or impeachment value. Therefore, Petitioner's sixth objection is overruled.

### G. Objections Seven and Eight

Judge Sitarski addressed Claims 7 and 8 together in her Report and Recommendation because they are related, and so, the Court will address Petitioner's objections attacking Judge Sitarski's conclusions regarding Claims 7 and 8 together. Petitioner first argues that Devon Henry's March 2022 affidavit "is qualitatively different from his trial testimony," in which he "claimed he could not recall giving a statement and denied his signature appeared on the documents." ECF No. 80 at 9. Judge Sitarski considered the Superior Court's analysis on this issue and concluded that the affidavit shows only that "Henry simply changed his story for the second time, contradicting his prior trial testimony as well as his initial police statement[.]" ECF No. 76 at 37. Petitioner puts forward no reasons to doubt the truthfulness of Devon Henry's testimony at trial, given under oath, and fails to explain why Henry's 2022 affidavit is actually the truthful account of what happened. The affidavit is also devoid of details of the alleged police coercion that led to Henry's signed statement that was admitted at trial. *See* ECF No. 28 at 3. As such, Judge Sitarski properly found the affidavit to be cumulative of "the fact of [Henry's] recantation," which took place during the trial, and thus, the affidavit is not material to Petitioner's defense. ECF No. 76 at 37. Objection seven is overruled.

Next, Petitioner argues that because Detective Crone took Devon Henry's statement after the shooting, "[e]vidence of Detective Crone's character for violence and his willingness to engage in aggressive, inappropriate conduct is directly relevant to the credibility of Henry's coercion allegation." ECF No. 80 at 10. However, the specifics of Detective Crone's alleged misconduct, as spelled out in detail in a footnote in the Superior Court's PCRA opinion, *Spuriel III*, 2024 WL 4274726, at *9 n.11, are wholly unrelated to his career as a detective and therefore "are not probative of an inclination to procure false testimony in any way," ECF No. 76 at 37. Petitioner contends that Detective Crone's misconduct record bolsters Devon Henry's allegation in his 2022 affidavit that he was coerced into signing a statement he did not agree with. ECF No. 80 at 10. However, the fact that Detective Crone engaged in alleged misconduct in his personal life and with work colleagues does not even remotely suggest that he coerced witnesses when questioning them during crime investigations. Objection eight is overruled.

### H.  Objection Nine

Judge Sitarski recommended that Petitioner's motion to amend his Petition to add Claim 9 be denied as futile because Claim 9 is non-cognizable on federal habeas review as it asks the federal court to review a state evidentiary ruling. ECF No. 76 at 15–16. Petitioner's objection does not address Judge Sitarski's conclusion that Claim 9 is not cognizable and instead focuses on the merits of the claim. ECF No. 80 at 11. Even looking at the merits, the Superior Court has already explained that questioning Detective Marano regarding the circumstances of Andrew Fairey's interview was unnecessarily cumulative because Petitioner's trial counsel had already extensively cross-examined Detective Grebloski, the other detective who conducted Mr. Fairey's interview, on the surrounding circumstances. *Spuriel I*, 2014 WL 10575388, at *7. And while Petitioner claims that "Detective Marano had information about Fairey's interview that the other detectives

14

did not have," ECF No. 80 at 11, he does not specify the supposed information that only Detective Marano knew. So, even if Claim 9 was cognizable on federal habeas review, it would still fail on the merits. Objection nine is overruled.

### I. Objection Ten

Petitioner objects to Judge Sitarski's recommendation that no certificate of appealability be issued. ECF No. 80 at 12. In making this objection, Petitioner argues generally that "[e]ach of the claims raised in Petitioner's habeas petition satisfies" the standard dictating when a certificate of appealability should issue. *Id.* However, Petitioner fails to elaborate on how reasonable jurists could debate whether the issues presented in his Petition should have been resolved differently, relying instead on conclusory assertions that the issues are debatable. *See id.* Objection ten is overruled.

### J. Objection Eleven

Petitioner objects to Judge Sitarski's recommendation that Petitioner's request for appointment of counsel and discovery be denied as moot. ECF No. 80 at 13. Having overruled all of Petitioner's other objections to Judge Sitarski's Report and Recommendation, the Court finds that any outstanding motions and requests by Petitioner are indeed moot. In any case, with respect to Petitioner's request for counsel, there is no constitutional right to counsel in postconviction proceedings, and so, Petitioner is not entitled to counsel to assist with his federal habeas petition. *Davila v. Davis*, 582 U.S. 521, 524 (2017); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). With respect to Petitioner's request for discovery, Petitioner has not demonstrated good cause that further discovery will lead to additional evidence supporting his claims. Objection eleven is overruled.

15

### K. Objection Twelve

Petitioner's final objection is to the state court's factual findings, which Petitioner contends "are demonstrably contradicted by the trial record." ECF No. 80 at 14. Petitioner then raises factual issues with the state court's characterization of certain pieces of evidence, contradictions between physical evidence and witness statements to the police, and the crediting of witness statements that were repudiated at trial. *Id.* at 14–17. While raising these supposed issues with the state court's factual findings, Petitioner fails to explain how these findings were relied upon by Judge Sitarski in her Report and Recommendation. Further, the factual issues raised by Petitioner are repetitive as most of the issues were already raised in his other objections, and as such, have already been discussed at length. The remaining issues, such as the Commonwealth's "luring" theory, *see id.* at 14–15, 16–17, are irrelevant to the claims in the Petition as they are not discussed in any of the claims. For these reasons, objection twelve is overruled.

### L. Amended Objections

Petitioner recently filed, *pro se*, a Motion to File Amended Objections on May 26, 2026.[3] ECF No. 81. This Motion comes several months past Petitioner's deadline to file objections to the Report and Recommendation. *See* ECF No. 79 (granting Petitioner's Motion to Extend Time to File Objections to the Report and Recommendation and setting a deadline of February 17, 2026). Additionally, Petitioner is now represented by counsel and as such, may not submit *pro se* filings to the Court, as hybrid representation is prohibited. *United States v. Turner*, 677 F.3d 570, 578 (3d Cir. 2012). In any event, a review of Petitioner's amended objections reveals that they fail on the merits, so amendment, even if allowed, would be futile. Petitioner's amended objections are

---

[3] The docket entry reflects that Petitioner's Motion to File Amended Objections was docketed on June 1, 2026 but Petitioner dated the Motion on May 26, 2026. ECF No. 81 at 9.

largely repetitive of the objections filed by his counsel in ECF No. 80, which have already been addressed at length. The amended objections that are not repetitive are not responsive to any of the claims in the Petition. Such objections include attacking the expert testimony of Dr. Osbourne and arguing that the prosecutor made allegedly improper opinion statements during her closing argument. ECF No. 81 at 2–4. These objections do not correspond to any of the claims made in the Petition or any of the amendments to the Petition. *See* ECF Nos. 2, 15, 28, 51. Thus, these objections appear to raise new claims entirely for habeas relief, and as such, the objections have no bearing on the merits of Petitioner's pending habeas Petition. Accordingly, Petitioner's Motion to File Amended Objections (ECF No. 81) is denied.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court will overrule Petitioner's objections (ECF No. 80) to Judge Sitarski's Report and Recommendation and will adopt the Report and Recommendation (ECF No. 76) in full. The Court will deny the Petition for Writ of *Habeas Corpus* (ECF No. 2). No certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right under 28 U.S.C. § 2253(c)(2).

An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**